**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-------------------------------------------------------X
ROSHINI GEORGE (formerly known as ROSHINI
GIVERGIS),

                            Plaintiff,

         - against -

THE NEW YORK AND PRESBYTERIAN HOSPITAL,

                        Defendant.
-------------------------------------------------------X

**Case No.**

**COMPLAINT**

**PLAINTIFF DEMANDS
A TRIAL BY JURY**

Plaintiff ROSHINI GIVERGIS ("Plaintiff") by her attorneys, Gen Esq Law PLLC, hereby

complains of the Defendant, upon information and belief, as follows:

## NATURE OF THE CASE

Plaintiff complains pursuant to Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C.

§§ 2000e *et seq.* ("Title VII"), as amended by the Pregnancy Discrimination Act of 1978, 42

U.S.C. §§ 2000e(k) (the "PDA"), the Americans with Disabilities Act of 1990, 42 U.S.C. §§

12101, et seq. ("ADA"), as amended by the ADA Amendments Act of 2008 (Pub. L. No. 110-

325) ("ADAA"), the New York State Human Rights Law, New York State Executive Law §§

296 *et seq.* ("NYSHRL"), and the New York City Human Rights Law, New York City

Administrative Code §§ 8-502(a) *et seq.*, and seeking damages to redress the injuries she has

suffered as a result of being discriminated and retaliated against on the basis of her sex/gender,

pregnancy, and disability (post-partum depression and major depressive disorder), resulting in

Plaintiff suffering a hostile work environment, and ultimately being terminated by her employer.

## JURISDICTION, VENUE, AND PROCEDURAL PREREQUISITES

1.      This Court has subject matter jurisdiction over Plaintiff's claims pursuant to 42 U.S.C. §2000e-5(f)(3) and 28 U.S.C. §§ 1331 and 1343.

2.      This Court has supplemental jurisdiction over Plaintiff's claims under the NYSHRL and the NYCHRL pursuant to 28 U.S.C. § 1367.

3.      Venue is proper in this District pursuant to 28 U.S.C. § 1391(b), as the acts complained of occurred within the SOUTHERN District of New York.

4.      By: (a) timely filing a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC") on June 13, 2022; (b) receiving a Notice of Right to Sue from the EEOC on November 16, 2022; and (c) commencing this action within 90 days of the issuance of the Notice of Right to Sue by the EEOC, Plaintiff has satisfied all of the procedural prerequisites for the commencement of the instant action.

5.      Plaintiff has timely filed this Complaint within ninety (90) days of receiving the Notice.

i.      **PARTIES**

6.      Plaintiff is a resident of the State of New Jersey and Hudson County.

7.      Defendant NEW YORK AND PRESBYTERIAN HOSPITAL ("Defendant NYPH") is a domestic not-for-profit corporation duly existing pursuant to, and by virtue of, the laws of the State of New York.

8.      Defendant NYPH operates a hospital at 525 E. 68th Street, New York, NY 10065.

9.      Upon information and belief, Defendant NYPH has more than fifteen employees.

10.     At all relevant times, Plaintiff was an employee of the Defendant NYPH.

## **MATERIAL FACTS**

11.    On or about March 8, 2019, Plaintiff began working for the Defendant NYPH as a "Clinical

Program Coordinator/Nurse Navigator."

12.    Plaintiff was being paid $64.29 per hour and normally worked five days per week for

approximately 42 hours per week.

13.    Plaintiff's anticipated salary for 2022 was approximately $121,000.

14.    On or about November 1, 2020, Plaintiff learned she was pregnant and she shared the news

of her pregnancy with her manager, Defendant NYPH's Patient Care Director, Camilita

Rahat ("Ms. Rahat") on or about November 25, 2020.

15.    After learning of Plaintiff's pregnancy, Ms. Rahat repeatedly questioned Plaintiff's ability

to work once she had her baby, making Plaintiff feel extremely offended and

uncomfortable.

16.    Throughout Plaintiff's pregnancy, Ms. Rahat asked Plaintiff questions such as "who is

going to watch the baby?" and "are you going to come back [after maternity leave]?"

17.    Ms. Rahat also made comments such as "you're not coming back" and "when I was

pregnant I did not have that much time off" referencing the amount of time Plaintiff was

going to take off work for the birth and care of her newborn.

18.    Plaintiff felt extremely uncomfortable, embarrassed, and offended by Ms. Rahat's

continuous discriminatory comments and questions, which were witnessed by Plaintiff's

colleague Heather Bain, a Clinical Program Coordinator at Defendant NYPH.

19.    As Plaintiff's pregnancy progressed, Plaintiff began noticing that Ms. Rahat's Supervisor,

Outpatient Oncology Director, Lara Scrimenti ("Ms. Scrimenti"), was interfering with

Plaintiff's work and pressuring her to complete projects ahead of schedule so that said project would not be delayed by Plaintiff's maternity leave or passed on to another employee in Plaintiff's absence.

20.     Upon information and belief, Plaintiff was being pressured to launch a project before taking her maternity leave so that a Staff Nurse at Defendant NYPH would be entitled to receive a promotion more quickly.

21.     On or around April 29, 2021, Plaintiff met with Ms. Scrimenti. During this meeting, Ms. Scrimenti assigned Plaintiff additional work and displayed blatant microaggressions towards Plaintiff, implying that Plaintiff did not work enough, which were witnessed by Defendant NYPH employees Dr. Erin Mulvey and Sonia Duggan.

22.     On April 30, 2021, Plaintiff reported her concerns regarding the pressure and discrimination she was facing to Ms. Rahat. Ms. Rahat shared this information with Lara Scrimenti ("Ms. Scrimenti"), Director of Outpatient Oncology at Defendant NYPH.

23.     In her email, Plaintiff explained that she was assigned to work on a project that another employee (Ryan McAdams, Staff Nurse at Defendant NYPH) received credit and promotion eligibility for despite having barely contributed to the work being done.

24.     After explaining the details of the project and Plaintiff and Ryan's respective roles and recognition, Plaintiff stated in her April 30, 2021 email: "I am now facing conflict in progressing this project because of favoritism and discrimination." As well as "it has come to a point, where I cannot tolerate this discrimination. I have already informed everyone that I am in my third trimester of pregnancy. The pressure and lack of support has been causing me distress."

25.   That same day, Plaintiff received a response from Ms. Rahat, stating "I am sorry that this is your experience and have concerns." Ms. Rahat then directed Plaintiff to Defendant NYPH's "Senior HR Business Partner" Rukiya McFadden (SHRM McFadden").

26.   By the time she had made this complaint and since sharing the news of her pregnancy, Plaintiff had been feeling extremely frustrated, anxious and distressed as she had been blocked from meetings by Ms. Rahat.

27.   On May 3, 2021, Plaintiff received a response from Ashley Akins-Atewogboye ("Ms. Akins-Atewogboye"), a member of Defendant NYPH's Respect Office requesting to meet with Plaintiff "in-person or via zoom" to discuss Plaintiff's complaint.

28.   On or about May 4, 2021 at approximately 11:00 a.m., Plaintiff met with Ms. Akins-Atewogboye.

29.   During said meeting, Plaintiff was repeatedly and condescendingly asked to explain why she felt that she was being discriminated against. Despite Plaintiff's numerous explanations, Ms. Akins-Atewogboye concluded that the situation Plaintiff was facing was caused by poor delegation by management in complete disregard of Plaintiff's detailed explanations of the discrimination that she faced.

30.   By the conclusion of her meeting with Ms. Akins-Atewogboye, Plaintiff felt dismissed by Defendants and no longer trusted Defendants' Human Resources department to protect her from discrimination in the workplace.

31.   Following her meeting with Ms. Akins-Atewogboye, Plaintiff sent her a follow-up email requesting an overview of the investigation that she was told would be conducted into her complaints.

32.     On May 19, 2021, Ms. Akins-Atewogboye responded to Plaintiff's request informing her that "Per the policy of [Defendant NYPH], we don't share overviews of our investigations."

33.     Plaintiff then asked for the results of the investigation that was conducted, which Ms. Akins-Atewogboye refused to provide to Plaintiff in writing via e-mail after reiterating that the findings were told to Plaintiff via telephone on May 17, 2021.

34.     In response, Plaintiff confirmed with Ms. Akins-Atewoboye and SHRM McFadden that the answer given to Plaintiff verbally was "We have investigated your concerns. There was no evidence of discrimination found. Francie, [Plaintiff's] Service Line Director will reach out to [Plaintiff] regarding the next steps."

35.     After reporting the discrimination she faced to Defendant NYPH's Human Resources partner, Plaintiff was subjected to retaliation by Ms. Rahat.

36.     By way of example, Ms. Rahat delayed Plaintiff's other pending projects that Plaintiff intended to complete prior to taking maternity leave.

37.     On or about June 23, 2021, Plaintiff provided Defendants with a doctor's note signed by her physician, Dr. Vander Haar, stating "Please be advised that [Plaintiff] is an obstetrical patient of mine. Her medical condition of having a high risk pregnancy and her gestational age, she has been advised to work from home."

38.     That same day, Plaintiff received a call from Ms. Rahat, who was noticeably angry and verbally aggressive towards Plaintiff because Plaintiff had attempted to provide "handoff" materials to her colleagues for work that needed to be completed in Plaintiff's absence. When Plaintiff attempted to explain why she had attempted to provide said materials to her colleagues, Ms. Rahat responded " was also pregnant three times before, you don't need to tell me how it is."

39.     Upon information and belief, Ms. Rahat had been verbally aggressive towards Plaintiff on numerous other occasions, which were witnessed by Plaintiff's colleague, Heather Bain.

40.     By the end of August 2021, Plaintiff was experiencing Postpartum Depression, which led to Plaintiff's emergency hospitalization, where she later was diagnosed with Major Depressive Disorder.

41.     On July 16, 2021, Plaintiff began her maternity leave. Prior to leaving for maternity leave, Plaintiff ensured that her project was completed and submitted.

42.     However, on or around July 26, 2021, Plaintiff received text messages from Defendants' Patient Navigator, Rhonda Theodore, implying that Ms. Rahat had never shared Plaintiff's "handover plan" that Plaintiff had submitted prior to taking her maternity leave.

43.     On November 5, 2021, Plaintiff shared her diagnosis with Ms. Rahat, and she expressed her need for guidance and support in recovering from her illness.

44.     Ms. Rahat responded by informing Plaintiff that the clinic was undergoing some changes and that she would be in touch with Plaintiff as Defendants transitioned back to in person working.

45.     On December 2, 2021, Plaintiff received a mass email from Defendant NYPH's Paula Goldstein, stating that the format of Plaintiff's clinic experience would be changing as of January 1, 2022 and requesting to schedule "work group meetings" with all of the email recipients on Mondays at 10:00 a.m.

46.     On December 3, 2021, Plaintiff received an email from Ms. Rahat stating that Defendant NYPH had resumed in person working requirements. In response to Plaintiff' request for accommodation to continue working remotely, as she previously had been, Ms. Rahat explained in her email that Plaintiff's request could be accommodated only to allow

Plaintiff to work remotely three (3) days per week for one (1) month following Plaintiff's approved time. Subsequently, Plaintiff would only be allowed to work remotely two (2) days per week the second month of her accommodation and would be required to return to in person work five (5) days per week after the second month of the proposed hybrid schedule.

47.    On January 4, Plaintiff responded to Ms. Rahat's email and explained that due to the widespread Omnicron variant of the COVID-19 pandemic, Plaintiff preferred to work fully remotely, as she had requested and been advised by her doctor. Plaintiff then requested details regarding her new role and the clinic she would be working for upon her return to Defendant NYPH.

48.    On January 5, 2022, Plaintiff received a response from Ms. Rahat stating that the decision not to allow Plaintiff to work fully remotely was based on Defendant NYPH directives and that Plaintiff's request had been shared with Defendant NYPH's "HR Business Partner" who was responsible for reviewing Plaintiff's request for accommodation and informing Ms. Rahat of their decision, which Ms. Rahat would then share with Plaintiff.

49.    On January 11, 2022, Plaintiff again emailed Ms. Rahat to request an update on the status of her request for accommodation and inform her that Plaintiff's anticipated return to work date was January 18, 2022.

50.    On January 12, 2022, Ms. Rahat emailed Plaintiff informing her that her request to work fully remotely had been denied and Defendant NYPH was only willing to support a "graduated transition" back to work. Ms. Rahat then presented the same return to work plan that she had previously presented to Plaintiff, requiring her to work in person two (2)

days per week for one month, three (3) days per week the following month, and no remote work accommodation the following months.

51.     On January 14, 2022, Plaintiff emailed Ms. Rahat expressing her frustration with Defendant NYPH's refusal to provide her with a reasonable accommodation due to her pregnancy and pregnancy-related disability as well as with Defendant NYPH's handling of Plaintiff's previously made complaint of discrimination.

52.     Despite Plaintiff's repeated requests for information regarding the new role and clinic she would be assigned to, Ms. Rahat refused to provide said information unless Plaintiff first agreed to Defendant NYPH's inadequate proposed accommodation.

53.     On January 24, 2022, Ms. Rahat emailed Plaintiff reiterating Defendant NYPH's proposed accommodation and requesting Plaintiff's acceptance, explaining that Defendant NYPH was "unable to offer a 100% remote schedule" despite Plaintiff having previously worked 100% remotely for Defendants throughout the COVID-19 Pandemic.

54.     Despite Plaintiff having been told she was to return to work on January 18, 2022, Plaintiff was repeatedly informed by Ms. Rahat that her work medical assessment was still pending clearance to allow Plaintiff to return to work.

55.     On January 25, 2022, Plaintiff emailed Ms. Rahat, WHS Cornell Providers, and Mary Desantis requesting an update regarding Plaintiff's clearance to return to work and her accommodation request.

56.     On January 26, 2022, Plaintiff emailed Ms. Rahat confirming that she had been medically cleared to return to work and again requesting for a description of the job and responsibilities Plaintiff was expected to return to.

57.     In response, Ms. Rahat emailed Plaintiff explaining that Plaintiff's position and job titled was to remain the same and reiterating Defendant NYPH's inadequate proposed accommodation and the need for Plaintiff's acceptance so she could be scheduled to work again.

58.     On January 28, 2022, Plaintiff forwarded Defendant NYPH's VP of Human Resources Vanessa Dawkins ("Ms. Dawkins") the emails exchanged between herself and Ms. Rahat. In her email, Plaintiff described her frustration with not having been provided the details of the new role she was expected to fill upon her return as well as the lack of explanation for Defendant NYPH's refusal to grant her request for reasonable accommodation in its entirety.

59.     Upon information and belief, Defendant NYPH refused to allow Plaintiff to return to work until she had agreed to Defendant NYPH's proposed accommodation, which was not in accordance with Plaintiff's initial request to work fully remotely due to her disability and safety concerns for her newborn.

60.     On January 30, 2022, Plaintiff received an email from Ms. Dawkins including SHRM McFadden so that SHRM McFadden could provide Plaintiff with a description of Plaintiff's new role and clinic. Ms. Dawkins also wished to discuss Plaintiff's complaints of discrimination and informed Plaintiff that her evaluation was still being completed by her leaders.

61.     On February 7, 2022, Plaintiff met with Ms. Rahat, Ms. Scrimenti, and SHRM McFadden via zoom to discuss Plaintiff's concerns and return to work. Plaintiff was informed that she was being assigned to follow all of the patients she had previously worked with regardless of their clinic location.

62.   This assignment of work required Plaintiff to navigate approximately one hundred and eighty-eight (188) patients who had been transferred to different clinics in different locations based on their diagnosis.

63.   The aforementioned work required of Plaintiff was not comparable to Plaintiff's previous work nor was it comparable to what was asked of Plaintiff's colleagues Heather Bain, Nicole Wenz, Meaghan Brosnan, and others who were all assigned to a designated clinic.

64.   Accordingly, Plaintiff felt harassed, further discriminated against, anxious, distressed, and humiliated by the retaliation she was being subjected to by Defendant NYPH.

65.   Following their meeting, SHRM McFadden emailed Plaintiff with a revised proposed accommodation for Plaintiff to return to work. This proposed plan allowed for Plaintiff to work fully remotely for her first three (3) weeks of work upon her return, followed by a two (2) day on-site requirement for the next four (4) weeks and a three (3) day on-site requirement for the following four (4) weeks. At the conclusion of the proposed three (3) day on-site requirement for the last four weeks of accommodation proposed, Plaintiff would then be required to return to work on-site completely.

66.   Plaintiff  was incredibly frustrated with this proposal as she had initially been told that it was not possible for her to perform her work fully remotely, as she previously has been, with no explanation.

67.   After pleading for months with Defendant NYPH representatives for her reasonable accommodation, Defendant NYPH made it clear to Plaintiff with the revised proposed accommodation that it was possible for her to continue working fully remotely, but that Defendants refused to grant this accommodation for the extended period of time she needed.

68.     On February 10, 2022, Plaintiff emailed SHRM McFadden along with several other employees of Defendant NYPH. Plaintiff explained that her request for reasonable accommodation was due to her pregnancy and pregnancy-related complications and that she had been subjected to harassment and discrimination by her managers since disclosing her pregnancy. Plaintiff then expressed her frustration with the retaliation she faced in her attempt to return to work and the effect Defendant NYPH's discriminatory and retaliatory actions were having on her mental health.

69.     Furthermore, Plaintiff explained in her email the unduly burdensome task she was assigned which involved contacting approximately one hundred and eighty-eight (188) patients who had not been contacted for over six (6) months in order to update their records with very little information about the different clinics, their process flow, and patient's Attendings. This made it incredibly difficult to provide guidance to patients who requested information of Plaintiff and caused Plaintiff to *"continue to feel like [Plaintiff] am working in a hostile and unsupportive environment" since returning from her maternity leave.*

70.     Plaintiff felt incredibly desperate for assistance and continued to send emails to Defendant NYPH representatives pleading for assistance and/or guidance on how to proceed fairly.

71.     In response to Plaintiff's pleas and complaints, Plaintiff received an email from SHRM McFadden incorrectly claiming that Plaintiff had submitted insufficient medical documentation to support her request for reasonable accommodation to work fully remotely.

72.     On February 15, 2022, Plaintiff replied to Ms. Dawkins' email and explained that per Defendant NYPH policy as well as federal and local laws, Plaintiff had in fact provided sufficient medical documentation and had requested a reasonable accommodation that

Defendant NYPH should have granted as her request would not cause undue hardship or significant difficult to Defendant NYPH nor was it not possible. Plaintiff also requested to continue their conversations in writing.

73. Despite Plaintiff's request to communicate in writing, Plaintiff received an email from Ms. Dawkins on February 16, 2022 requesting to speak with Plaintiff over the phone that same day or the next.

74. On February 18, 2022, Plaintiff received an email from Ms. Dawkins again incorrectly claiming that Plaintiff had not submitted sufficient medical documentation to support her request for reasonable accommodation.

75. On March 7, 2022, Plaintiff emailed Ms. Dawkins to gain clarity on why Plaintiff had not received a paycheck from Defendant NYPH since February 13, 2022. In her email, Plaintiff asked Ms. Dawkins "why am I being penalized during a disability review when I have already been cleared to work since January 25, 2022?"

76. On March 10, 2022, Ms. Dawkins responded to Plaintiff's email and explained that as Plaintiff had not agreed to Defendant NYPH's proposed accommodation, Plaintiff had essentially "not agreed to work the previous 2 transitional work schedules."

77. In response, Plaintiff emailed Ms. Dawkins along with several other managing and human resource employees of Defendant NYPH stating *"I know I am facing retaliation here. After pregnancy, since November I had requested for a reasonable accommodation to start my work on January 18. As you mentioned, I was only provided with a default transition back to work, like any other employee returning back from a long leave without considering my disability accommodation, until I pointed out the policy. Why does the employee have to bear the burden of not getting paid and suffer financial hardship on top of already dealing*

*with mental health issues while the employer is still reviewing the disability accommodation due to non compliance and lack of training on the Hospital Policy and the Law?"*

78.   In response, Plaintiff received an email on March 10, 2022 from Defendant NYPH Senior Vice-President and Chief People Officer Shaun Smith ("CPO Smith"), who explained that Plaintiff could not be cleared to return to work until Defendant NYPH's Workforce Health & Safety Department was able to discuss Plaintiff's request for accommodation with the doctor who had provided the doctor's note requesting accommodation.

79.   On March 11, 2022, Plaintiff responded to CPO Smith to clarify the timeline of Plaintiff's request for accommodation, submission of medical documentation, and the obstacles she has faced due to Defendant NYPH's inappropriate and incorrect handling of her request and complaints of discrimination and retaliation she faced as a result of her pregnancy and pregnancy-related disability.

80.   Plaintiff desperately sought to convey to CPO Smith the hardships that she had endured in attempting to return to work and further stated *"my health has not been safeguarded by the team. I had face discrimination and hardship during my pregnancy by my manager and her superior while at [Defendant NYPH]. Since then I have faced retaliation, and till date no one has addressed my discrimination or retaliation report. Instead, it has been dismissed by the HR team and the Compliance team … I have been cooperative, even though I have been disrespected and given the runaround in this process to the point where it has negatively impacted my personal wellbeing. I had placed my trust in my leaders, however they have deliberately discriminated me by delaying response or ignoring my questions, by giving me tedious tasks without a proper handover, and by intimidating me*

*to take the proposed accommodation that does not meet the guidelines under the Americans with Disability Act…"*

81.   On March 15, 2022, Ms. Dawkins emailed Plaintiff to advise her that Defendant NYPH's Workforce Health & Safety Department review had been concluded and she wished to schedule a phone call with Plaintiff to discuss the matter.

82.   On March 16, 2022, Plaintiff spoke with Ms. Dawkins.

83.   On March 17, 2022, Plaintiff emailed CPO Smith, SHRM McFadden, Ms. Dawkins, and Steven Corwin to express her disappointment in her call with Ms. Dawkins the previous day as Plaintiff was simply presented the same proposed accommodation she had previously rejected.

84.   On March 18, 2022, CPO Smith responded to Plaintiff's email expressing his confidence in Defendant NYPH's human resources department and their ability to handle Plaintiff's complaints directly. CPO Smith also stated that Plaintiff could not work fully remotely as her role required her to meet with patients, despite Plaintiff having previously agreed to work on-site on a scheduled basis when having to meet with patients directly and Defendant NYPH's proposed accommodation to allow Plaintiff to work fully remotely for a short period of time, demonstrating that Plaintiff's role could be, in fact, performed remotely.

85.   On March 19, 2022, Plaintiff replied via email and reiterated her ability to perform remotely, citing her navigation reports from January to April of 2021 that demonstrate Plaintiff having previously navigated approximately 90% of her patients remotely via phone, email, or Defendant NYPH's patient portal.

86.     On March 21, 2022, SHRM McFadden emailed Plaintiff a list of open positions at
        Defendant NYPH that are "100% remote" that Plaintiff could apply for.

87.     Desperate for assistance and fearful of losing her job due to retaliation by Defendant
        NYPH, Plaintiff emailed Defendant NYPH's Human Resources team in attempt to describe
        her request for reasonable accommodation and the laws supporting her request.

88.     On March 22, 2022, Plaintiff received an email from SHRM McFadden advising that
        Plaintiff needed to either accept Defendant NYPH's inadequate proposed accommodation
        by March 25, 2022 or Defendant NYPH would begin "a search" to replace Plaintiff with
        someone who was willing and able to work fully on-site. Accordingly, Plaintiff was told
        that her employment by Defendant NYPH would end on April 1, 2022 unless Plaintiff
        applied and was accepted for another open remote position within Defendant NYPH.

89.     Plaintiff was shocked and devastated upon reading the aforementioned email as she had
        known of several patient related roles filled by employees Nicole Wenz, Rhonda Theodore,
        Nino Khunashvilli, Danielle Laffin, May Lorivivi Cruz, and others within Defendant
        NYPH that were permitted to remain working from home, contrary to what Plaintiff had
        been told by SHRM McFadden.

90.     Additionally, the list of remote positions within Defendant NYPH that Plaintiff had been
        provided did not provide any options to Plaintiff as the roles were outside of Plaintiff's
        skills and qualifications and would essentially demote Plaintiff for needing to work from
        home due to her pregnancy and pregnancy-related disability.

91.     On March 25, 2022, after a phone call in which Plaintiff reiterated her frustrations and
        concerns, Plaintiff received an email from SHRM McFadden stating that Plaintiff's role

would be filled and Plaintiff was to be terminated effective April 1, 2022 due to Plaintiff's refusal to accept Defendant NYPH's inadequate accommodation proposal.

92. In response, Plaintiff sent an email on March 28, 2022 clarifying that while she was more than willing to return to her position, she was denied a reasonable accommodation in order to be able to do so. Furthermore, Plaintiff stated *"…I did not make this decision, it was forced upon me that if I don't take this return to work schedule provided by employer then I am terminated as per earlier email. This is clearly retaliation against me."*

93. It is clear from SHRM McFadden's statements, as well as from the temporal proximity of Plaintiff's requests for an accommodation and her termination that the reason to terminate Plaintiff was discriminatory based on her disabilities and retaliatory for engaging in protected activities.

94. Plaintiff was also unlawfully terminated for complaining of discrimination and harassment related to her pregnancy.

95. Defendant NYPH did not accommodate Plaintiff and because of their disregard for her accommodation, Plaintiff suffered damages.

96. Plaintiff has been unlawfully discriminated against on the basis of her actual and/or perceived disabilities (Recurrent Major Depressive Disorder) and for requesting a reasonable accommodation.

97. Defendant NYPH acted intentionally and intended to harm Plaintiff.

98. Defendant NYPH retaliated against Plaintiff because she requested a reasonable accommodation for her disabilities.

99. Defendant NYPH is subject to the ADA.

100.  Plaintiff was disabled within the meaning of the ADA and/or Defendant NPYH perceived Plaintiff to be disabled.

101.  Plaintiff is a qualified individual who can perform the essential functions of her employment with or without a reasonable accommodation as defined by §12111(8) of the ADA.

102.  At all times relevant, Plaintiff's disabilities were mental impairments which substantially limits one or more major life activities within the meaning of § 12102(1)(A) of the ADA.

103.  Plaintiff was unlawfully treated, humiliated, degraded, victimized and embarrassed and, as a result, suffers loss of rights, emotional distress, and physical ailments and injuries.

104.  Defendant's actions and conduct were intentional and intended to harm Plaintiff.

105.  As a result of the acts and conduct complained of herein, Plaintiff has suffered and will continue to suffer emotional pain, inconvenience, loss of enjoyment of life, and other non-pecuniary losses.

106.  Plaintiff has further experienced severe emotional distress.

107.  Defendant's conduct has been malicious, willful, outrageous, and conducted with full knowledge of the law.

108.  As a result of the acts and conduct complained of herein, Plaintiff has suffered and will continue to suffer the loss of income, the loss of a salary, bonuses, benefits and other compensation which such employment entails, and Plaintiff has also suffered future pecuniary losses, emotional pain, suffering, inconvenience, loss of enjoyment of life, and other non-pecuniary losses. Plaintiff further experienced severe emotional and physical distress.

109.  As a result of the above, Plaintiff has been damaged in an amount in excess of the jurisdiction of the Court.

110.    Defendant NYPH's conduct has been malicious, willful, outrageous, and conducted with full knowledge of the law. As such, Plaintiff demands punitive damages.

## AS A FIRST CAUSE OF ACTION

### ii.    DISCRIMINATION UNDER TITLE VII

111.    Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this Complaint.

112.    Title VII of the Civil Rights Act of 1964, as amended 42 U.S.C. § 2000e(k) provides, in pertinent part, that:

> The terms "because of sex" or "on the basis of sex" include, but are not limited to, because of or on the basis of pregnancy, childbirth, or related medical conditions; and women affected by pregnancy, childbirth, or related medical conditions shall be treated the same for all employment-related purposes, including receipt of benefits under fringe benefit programs, as other persons not so affected but similar in their ability or inability to work, and nothing in section 703(h) of this title [42 USCS § 2000e-2(h)] shall be interpreted to permit otherwise.

113.    This claim is authorized and instituted pursuant to the provisions of Title VII of the Civil Rights Act of 1964, 42 U.S.C. Section(s) 2000e *et seq*., for relief based upon the unlawful employment practices of the Defendant NYPH. Plaintiff complains of Defendant NYPH's violation of Title VII's prohibition against discrimination in employment based, in whole or in part, upon an employee's gender.

114.   Defendant NYPH violated the sections cited herein as set forth.

115.   Defendant NYPH engaged in unlawful employment practices prohibited by 42 U.S.C. §2000e *et seq.*, by discriminating against Plaintiff because of her sex/gender (female/pregnancy) and disability (major depressive disorder).

<u>**AS A SECOND CAUSE OF ACTION**</u>

**FOR RETALIATION UNDER TITLE VII**

116.   Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this Complaint.

117.   Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §2000e-3(a) provides that it shall be unlawful employment practice for an employer:

> (1) to discriminate against any of his employees . . . because [s]he has opposed any practice made an unlawful employment practice by this subchapter, or because [s]he has made a charge, testified, assisted or participated in any manner in an investigation, proceeding, or hearing under this subchapter.

118.   Defendant NYPH engaged in unlawful employment practices prohibited by discriminating and retaliating against Plaintiff with respect to the terms, conditions or privileges of employment.

<u>**AS A THIRD CAUSE OF ACTION**</u>

**DISCRIMINATION UNDER THE NYSHRL**

119.   Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this Complaint.

120.   New York State Executive Law § Executive Law § 296 provides that,

> It shall be an unlawful discriminatory practice: (a) For an employer or licensing agency, because of an individual's age, race, creed, color, national origin, sexual orientation, military status, **sex**, **disability**, predisposing genetic characteristics, marital status, or domestic violence victim status, to refuse to hire or employ or to bar or to discharge from employment such individual or to discriminate against such individual in compensation or in terms, conditions or privileges of employment.

121. Defendant NYPH engaged in an unlawful discriminatory practice by discriminating against the Plaintiff because of her **pregnancy, disability** and **sex/gender (female)**.

## AS A FOURTH CAUSE OF ACTION

### RETALIATION UNDER THE NYSHRL

122. Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this Complaint.

123. New York State Executive Law § 296(1)(e) provides that, "It shall be an unlawful discriminatory practice for any person engaged in any activity to which this section applies to retaliate or discriminate against any person because he or she has filed a complaint, testified, or assisted in any proceeding under this article."

124. Defendant NYPH engaged in an unlawful discriminatory practice by discriminating against Plaintiff because of her opposition to the unlawful employment practices of the Defendant NYPH.

## AS A FIFTH CAUSE OF ACTION

## DISCRIMINATION UNDER THE NYCHRL

125.    Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this Complaint.

126.    The New York City Administrative Code § 8-107(1) provides that:

> It shall be an unlawful discriminatory practice: (a) For an employer or an employee or agent thereof, because of the actual or perceived age, race, creed, color, national origin, **gender**, **disability**, marital status, partnership status, caregiver status, sexual orientation, uniformed service, or alienage or citizenship status of any person, to refuse to hire or employ or to bar or to discharge from employment such person or to discriminate against such person in compensation or in terms, conditions or privileges of employment.

127.    Defendant NYPH engaged in an unlawful discriminatory practice in violation of New York City Administrative Code §8-107(1)(a) by creating and maintaining discriminatory working conditions, and otherwise discriminating against Plaintiff because of her **sex/gender (female/pregnancy) and disability**.

## AS A SIXTH CAUSE OF ACTION

## RETALIATION UNDER THE NYCHRL

128.    Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this Complaint.

129.   The New York City Administrative Code § 8-107(7) provides that it shall be unlawful

discriminatory practice: "For an employer . . . to discriminate against any person because

such person has opposed any practices forbidden under this chapter. . ."

130.   Defendant NYPH engaged in an unlawful discriminatory practice in violation of New York

City Administrative Code § 8-107(7) by retaliating against Plaintiff because of Plaintiff's

opposition to the unlawful employment practices of Defendant NYPH.

**AS A SEVENTH CAUSE OF ACTION**
**DISCRIMINATION UNDER THE ADA**

1.   Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this

Complaint.

2.   Section 12112 of the ADA, titled "Discrimination," provides:

(a) General rule. - No covered entity shall discriminate against a qualified
individual on the basis of disability in regard to job application procedures, the
hiring, advancement, or discharge of employees, employee compensation, job
training, and other terms, conditions, and privileges of employment.

0.   Defendant NYPH violated this section as set forth herein.

**AS AN EIGHTH CAUSE OF ACTION**
**RETALIATION UNDER THE ADA**

1.   Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this

Complaint.

2.   The ADA prohibits retaliation, interference, coercion, or intimidation.

3.   Section 12203 of the ADA provides:

(a) Retaliation. No person shall discriminate against any individual because such
individual has opposed any act or practice made unlawful by this chapter or because
such individual made a charge, testified, assisted, or participated in any manner in
an investigation, proceeding, or hearing under this chapter.

> (b) Interference, coercion, or intimidation. It shall be unlawful to coerce, intimidate, threaten, or interfere with any individual in the exercise or enjoyment of, or on account of his or her having exercised or enjoyed, or on account of his or her having aided or encouraged any other individual in the exercise or enjoyment of, any right granted or protected by this chapter.

0.    Defendant NYPH violated this section as set forth herein.

## JURY DEMAND

131.   Plaintiff requests a jury trial on all issues to be tried.

**WHEREFORE**, Plaintiff respectfully requests a judgment against the Defendant NYPH:

A.    Declaring that Defendant NYPH engaged in unlawful employment practices prohibited by the Title VII, the ADA, the NYSHRL, and the NYCHRL, in that Defendant NYPH discriminated and retaliated against Plaintiff on the basis of her pregnancy, gender, and disability;

B.    Awarding damages to Plaintiff for all lost wages and benefits resulting from Defendant NYPH unlawful discrimination and retaliation and to otherwise make her whole for any losses suffered as a result of such unlawful employment practices;

C.    Awarding Plaintiff compensatory damages for mental, emotional and physical injury, distress, pain and suffering and injury to her reputation in an amount to be proven;

D.    Awarding Plaintiff punitive damages;

E.    Awarding Plaintiff attorneys' fees, costs, disbursements, and expenses incurred in the prosecution of the action;

F.    Awarding Plaintiff such other and further relief as the Court may deem equitable, just and proper to remedy the Defendant NYPH's unlawful employment practices.

Dated:  New York, New York

      February 2, 2022

By:    *Janelle Romero*
             Janelle J. Romero, Esq.
             **GEN ESQ LAW PLLC**
             *Attorney for the Plaintiff*
             515 Madison Avenue #8140
             New York, NY 10022
             T: (239) 272 – 7047
             janelle@genesqlaw.com